ELLEN O'DONNELL, Respondent, v. ROBERT McINTYRE Appellant.

*Action to cancel a tax sale — requirements of the statute as to certification of the assessment books must be strictly complied with — when provisions as to time of certifying will be deemed directory — when the oath of the assessors may be taken before a commissioner of deeds — right of one tenant in common to maintain an action to remove a cloud on the title to land held by several tenants in common.*

By the charter of the city of Rochester the assessment of the property within it, which is to be used by the board of supervisors as the basis for levying the tax, is to be made by the city assessors by the second Tuesday in April, in each year, and after the books are completed they are required to be certified and sworn to by the assessors, or a majority of them. The charter further provides that "the assessors shall make and certify to a correct copy of said assessment book, to be delivered to the supervisors of the several wards or election districts, respectively, for the use of the board of supervisors of Monroe county on or before the first day of October, in each year, to be by them presented to the board of supervisors of Monroe county as the ward rolls of the city."

*Held,* that the direction that the assessors should "make and certify to a correct copy" of the book implied that a written certificate to that effect should be made.

That the requirement that such a certificate should be made as to the books used by the board of supervisors was jurisdictional in its character, and that a tax levied upon assessments appearing upon a book not so certified was void.

That the fact that a true copy of the completed assessment book containing the oath of the assessors in the usual form, but not certified, was procured by the clerk of the board and presented to it at its annual meeting, did not render valid the tax attempted to be levied upon the property therein described.

That the provision requiring the books to be delivered "on or before the first day of October," in each year, was directory only, and that a delivery of the books after that time would be sufficient.

*It seems,* that since the abolition of the office of justice of the peace in the city of Rochester the oath of the assessors, although required by chapter 176 of

1851 to be taken before and certified by a justice of the peace, may be taken before a commissioner of deeds thereof.

Property is to be assessed to the person who owns it at the time the assessment is made.

One of several tenants in common may bring an action to remove a cloud upon the title of the land in which he has an interest

APPEAL by the defendant from a judgment, entered on the report of a referee.

The action is to remove an alleged cloud upon the title to land, created by a deed made by the treasurer of Monroe county to the defendant, pursuant to a sale for unpaid taxes. The conclusion of the referee was that the deed was void. The plaintiff recovered judgment.

*J. A. Stull,* for the appellant.

*Fanning & Williams,* for the respondent.

BRADLEY, J.:

The premises consist of a house and lot in the Eleventh ward of the city of Rochester. The assessment was made and the tax levied in 1879, on which was founded the sale of the property. And the question is, whether the proceedings by which the tax was levied were a substantial compliance with the statute on the subject, and such as to support the sale and deed of conveyance under which the defendant claims title. The assessors of the city make the assessment of the property within it for the action of the board of supervisors of the county of Monroe in the levy of general taxes. (Laws 1861, chap. 143.) And the time and manner of making and certifying the assessments are prescribed by the city charter, by which it is provided that they be made by the second Tuesday of April in each year, and entered in a separate book for each ward; that immediately after completion the assessors shall determine the time and place of their first meeting to hear objections, etc., of persons interested, of which at least ten days' notice shall be given by publication in the daily newspapers of the city; that they shall meet and continue their session for such purpose ten days; that when completed, the assessment books shall be certified and sworn by the assessors, or a majority of them. and delivered to the clerk of the city on or before the fifteenth day of June in each year, who shall report

the same to the common council at its next meeting, and that "*the assessors shall make and certify to a correct copy of said assessment book, to be delivered to the supervisors of the several wards or election districts respectively, for the use of the board of supervisors of Monroe county, on or before the first day of October in each year, to be by them presented to the board of supervisors of Monroe county as the ward rolls of the city.* \* \* \* The said assessors are hereby directed to make such additional amendments and corrections in said assessment-rolls as to the names of the actual owners or occupants of real estate therein assessed as they shall deem proper, at any time before the first day of October in each year." (Laws 1861, chap. 143, § 87, as amended by Laws 1869, chap. 267, § 5.)

The assessment was made, and afterwards and on the 25th day of October, 1879, the assessors severally made and subscribed an oath in respect to the assessment for the Eleventh ward, of the form prescribed by the statute (Laws 1851, chap. 176, § 8), before a commissioner of deeds by whom it was certified. No copy of the roll was delivered by the assessors to the supervisor of the ward, but the clerk of the board of supervisors' obtained a copy, with the oath so made and certified, from the assessors office, at or prior to the time of meeting of the board, and it was there used as the basis of their action in levying the tax upon the property of the ward. The assessment of the premises in question was to Mary Horrigan, at the value of $925, and the tax levied upon it was seven dollars and sixty-one cents. A warrant was issued, and for failure to collect and default in payment, the premises were sold August 18, 1880, by the treasurer of the county, pursuant to Laws of 1877, chapter 104, and by him bid in for the supervisors of the county for the last mentioned sum. And afterwards, on the 11th day of March, 1882, he assigned the certificate of sale to the defendant in consideration of such amount and interest, as authorized by statute (Id., § 13), and on the 29th August, 1882, made to him a deed. And on the thirtieth of that month the defendant served a written notice on the occupant, as required by the statute (Id., § 15), and filed in the office of the treasurer evidence of its service. The attention of the plaintiff was called to the notice soon after it was served. The premises were not redeemed from the sale. The treasurer made the requisite certificate, and the defend-

ant claims that on the expiration of six months from the time of so filing such evidence of service the conveyance to him became absolute, and that the plaintiff was barred of all right or title to the property. That is the effect of the conveyance and proceedings if the provisions of the statute have been substantially observed in conducting the proceedings, of the regularity of which prior to, and including the sale, the conveyance is presumptive evidence. (Id., 12.) The plaintiff's counsel say that the conveyance is void, because: 1. The assessors did not "make and certify to a correct copy" of the assessment book for the eleventh ward for the board of supervisors as required by the statute. 2. The affidavit of the assessors was made subsequently to the time they were required to deliver the copy of their roll to the supervisor. 3. The oath of the assessors was not taken before, and certified by, a justice. 4. The assessment was made neither to the owner or occupant of the land; and 5. The notice to redeem was not sufficient.

The proceeding upon which the defendant's alleged title depends being one to divest title to property without the consent of the owner is in derogation of the common law, and to make it effectual for that purpose the statute providing for the proceedings, and affording that effect as the result of them, must be substantially observed and pursued. This proposition has been repeatedly held. (*Sharp* v. *Speir*, 4 Hill, 76; *Sharp* v. *Johnson*, Id., 92; *Newell* v. *Wheeler*, 48 N. Y., 486; *Thompson* v. *Burhans*, 61 id., 65.)

The original assessment-rolls were to be delivered to the city clerk for the purposes of the levying the city taxes. And the same assessment was to go before the board of supervisors of the county for the purpose of the tax levy to be made by that body upon the property so assessed. The dual purpose of the assessment and such deposit of the original, required the provision for some method to place it before the board of supervisors in a properly authenticated manner. In that view the statute directed that the assessors should "make and certify to a correct copy" for that purpose to be delivered to the supervisors of the respective wards and by them presented to the board of supervisors.

This certificate of the assessors was the only statutory evidence provided for the board of supervisors, of the assessment made of city property. The propriety of this mode of authentication is not.

a subject for consideration. The fact that such is the legislative direction gives to it the character of materiality and requires compliance with that provision of the statute. And it will not do to say that because the requisite fact is that the board of supervisors have a correct copy its correctness can be equally as well established by other than the statutory evidence. In a proceeding of the character of that in question the statutory prescribed evidence of an essential fact upon which action is to be taken is no less important for the purposes of the result than the existence of the fact itself, although such evidence may not be conclusive of the existence of such fact on a direct review. (*People ex rel. Rogers v. Spencer,* 55 N. Y., 1.)

The board of supervisors when they levied the tax upon this property had before them what purported to be a copy of an assessment-roll of the property in the eleventh ward, with only such evidence that it was such as appeared upon or with it. There was no certificate that it was a correct copy of the roll. (Laws 1869, chap. 267, § 5.)

The affidavit accompanying it is merely the oath required to an assessment-roll, and does not in terms import anything more than that the assessors had made the assessment represented by the roll in the manner prescribed by the general statute.

The purpose of the statute constituting the city charter was to have the assessment of city property for the levy of its taxes the same as that for levy of taxes by the board of supervisors and only one assessment annually for both. To that extent the general statute on the subject was modified as applicable to the city. This could not be accomplished without having a copy of that made in April before the board of supervisors in the fall following. The affidavit furnished no evidence that the one produced there was a copy and cannot be treated as a certificate to that effect.

It follows that the board did not have the authentication required by the statute to enable them to legitimately assume that the roll was that upon which they were permitted to make the tax levy. This would seem to have been a substantial defect in the proceedings. (*Van Rensselaer* v. *Witbeck,* 7 N. Y., 517; *Westfall,* v. *Preston,* 49 id., 349; *People ex rel. Rogers* v. *Spencer,* 55 id., 1; *People ex rel. Gillies* v. *Suffern,* 68 id., 321; *Merritt* v. *Port-*

chester, 71 id., 309; Brevoort v. Brooklyn, 89 id., 128; Adriance v. McCafferty, 2 Robt., 153; Hinckley v. Cooper, 22 Hun, 253.) It is urged by the defendant's counsel that the want of the certification by the assessors was not a matter of substance, as it had no relation to the act of assessment, and there was no question but that a correct copy of the proper roll was before the board of supervisors and made the basis of their levy. The effect of this contention if supported would be to render the statutory direction, in respect to the manner of authenticating to the board, nugatory and permit them to resort to any convenient means of information, and thus without a record of the fact make it depend upon proof when the question of the validity of the tax levied, and of the title to property derived from proceedings founded on the levy, should arise, one of fact to be tried and determined upon such evidence as might be furnished. That would be contrary to well settled principles applicable to proceedings purely statutory, where the manner of conducting and authenticating them has been defined and specifically required by the legislature, and allow common-law evidence to supply the omission to observe in the proceeding the method of presentation of facts in support of them. The reason which permits departure in one instance may have like support in others, and in such case it would be difficult to locate the line of limitation. The manner directed by the statute for the conducting of such proceedings must be evidenced in the mode prescribed so far as is required by it. And such requirement is treated as matter of substance and as mandatory. The form given to the manner of its execution may not be important when it is a substantial compliance with the statutory direction. (Van Rensselaer v. Witbeck, 7 N. Y., 517; Thompson v. Burhans, 61 id., 52; Brevoort v. Brooklyn, 89 id., 128–132.) There is a presumption when circumstances permit that public officers have done their duty, which cannot arise when it affirmatively appears that they have omitted some essential act required of them.

In Parish v. Golden (35 N. Y., 462) it was held that the omission of the assessors to express in their affidavit annexed to the roll the exclusion of the amount of a certain class of property in that assessed, as provided by the statutory prescribed form of the affidavit, did not overcome the presumption that they had performed

their duty in making the assessment in that respect; and that a mere informal certificate or affidavit did not deny to the supervisors the authority to levy a tax and issue their warrant for its collection. It was there held that the omission was not substantial or material. While in the later case of *Westfall* v. *Preston* (49 N. Y., 355) the Parish case is not criticised, that of *Van Rensselaer* v. *Witbeck* is approved.

If the assessment could stand upon the general statute alone, it could, perhaps, be supported, as it apparently corresponds with the substantial requirements of the provisions of that statute. But it is not claimed that proceedings were, or could be, had independently of the provisions of the city charter in making it. The general statute provides that in the several cities the notices required may conform to the requirements of the laws regulating the time, place and manner for revising the assessments in cities, in all cases, where a different time, place and manner are prescribed from that mentioned in the general act. (Laws 1851, chap. 176, § 4.)

The provisions of section 8, chapter 267, of the Laws of 1869, must therefore be deemed to furnish the only method in respect to time, place and manner of making and revising assessments in the city of Rochester; it follows that the only assessment made in 1879 was in April, and that the original rolls were filed with the city clerk. The one presented to the board of supervisors cannot therefore be treated under the statute as an original assessment-roll.

The question in the case at bar, is whether the certifying a copy of it for the board of supervisors was a jurisdictional requirement. We are inclined to think that it was. No particular manner is provided for doing it, but the direction simply is that " the assessors shall make and certify to a correct copy" for that purpose. This fairly implies that it shall be done by their certificate in writing. In the Van Rensselaer case the defective certificate related to the manner which the assessors had performed their duty in making the assessments, and it was held insufficient to justify the levy of the tax, and the warrant to enforce collection; while in this case the omitted certificate did not relate to the manner of making an assessment it was required to inform the board that an assessment had been in fact made, and what it was as so made, which was no less important than the manner of doing it for the purposes of the action

of the board. The rule of strict adherence to the manner of proceeding, prescribed by statute to produce effectual results affecting and divesting titles to property, is adopted with a view to complete accuracy in the proceeding and does not permit relaxation, looseness or uncertainty by departure from or omission to observe the legislative direction in any substantial respect.

If these views are correct the defendant took no title by the deed in question. The other grounds of objection taken by the plaintiff should perhaps have some consideration. The fact that the affidavit was not made until October twenty-fifth is not deemed important. The matter of time involved in the provision of the statute may be treated as directory. The oath required by the act of 1851, may not be applicable to that made to the roll for the purposes of the levy of the city taxes, and the latter was no part of the roll to be certified to the board of supervisors.

The act of 1851, section 8, requires that the oath of the assessors be taken before and certified by a justice of the town or city in which they reside, and in view of the fact that the certificate of the officer as well as the oath of the assessors is thus directed, the requirement of the provision in respect to the officer must necessarily be observed. (*Craft* v. *Merrill*, 14 N. Y., 456; *Nat. Bank, etc.*, v. *Elmira*, 53 id., 49, 59.) The commissioner of deeds was permitted to administer oaths and take affidavits only when not required to be taken before other and particular officers (2 R. S., 284, § 49), and the same provision was transferred to the Code of Civil Procedure, section 842. By the abolition of the office of justice of the peace, in the city of Rochester, the statute requiring the oath to be taken before and certified by that officer, became impracticable there and ceased to direct that it should be done by him or any particular officer in the city. (Laws 1876, chap. 196, § 16.) The official act would therefore seem to come within the authority of the commissioner of deeds, before and by whom the oath was taken and certified.

The time when the assessment was made, as provided by the statute, controls in respect to the ownership of the property assessed. (*Mygatt* v. *Washburn*, 15 N. Y., 316; *Clark* v. *Norton*, 49 id., 243; *Clark* v. *Norton*, 58 Barb., 434; *Boyd* v. *Gray*, 34 How., 323; *Marsh* v. *Bowen*, 12 Abb. N. C., 1.)

Mary Horrigan was owner of the premises up to the time of her death, July 11, 1879. The assessment was required to be and must be deemed to have been made before that time. (Laws 1869, chap. 267, § 5.) And it properly remained as so assessed to her upon the roll. The time the affidavit was taken to the roll does not necessarily indicate that at which the assessment was made. The notice for the redemption of the premises from the sale contained all the information required to be furnished by it by the statute. It was not necessary to state in the notice the day on which the sale was made. (Laws 1877, chap. 104, § 15.)

The title to the premises became vested in the plaintiff alone or as tenant in common with two others as heirs of Mrs. Horrigan. The question of non-joinder of parties plaintiff is raised by the defense. Assuming that the plaintiff was one of three tenants in common, she could alone maintain the action for the recovery or protection of her interest.

The judgment should be affirmed.

SMITH, P. J., and BARKER, J., concurred.

Judgment affirmed, with costs.